992 F.2d 882
 61 USLW 2764, 16 Employee Benefits Cas. 2540,
Pens. Plan Guide P 23880E
 Jean A. McINTOSH, Individually and as Conservator for
Plaintiff Kristin K. McIntosh, a Protected Person, Appellee,
v.
PACIFIC HOLDING COMPANY and Pacific Holding Company Employee
Welfare Benefit Plan, Appellants.
 No. 92-3621.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 12, 1993.
Decided May 17, 1993.
Rehearing Denied June 24, 1993.
 
 Shawn D. Renner, Lincoln, NE, argued, for appellants.
 Timothy Robert Engler, Lincoln, NE, argued (Timothy R. Engler and Gregory D. Barton, on the brief), for appellee.
 Before WOLLMAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and STOHR,* District Judge.
 MORRIS SHEPPARD ARNOLD, Circuit Judge.
 
 
 1
 In July, 1988, Kristin McIntosh was very seriously injured in a car accident. At the time, Jean McIntosh, Kristin's mother, had health care insurance through her employer, the Pacific Holding Company. As Jean McIntosh's minor dependent, Kristin was also insured under that coverage. Kristin made claims through the health care plan for medical expenses related to her injuries; the health care plan has paid over $430,000 to date for those expenses.
 
 
 2
 In December, 1988, the health care plan and the employer notified Jean McIntosh that they considered it her obligation to reimburse the health care plan for some of the benefits paid if she recovered any money from third parties "by way of settlement" related to Kristin's injuries from the accident. The health care plan and the employer also stated that they considered the health care plan to be subrogated to any claims against third parties that could be made on Kristin's account. A month later, Jean McIntosh acknowledged those understandings of the health care plan and the employer but reserved her own right to seek a legal determination of the health care plan's and the employer's entitlement to reimbursement or subrogation related to any such money recovered.
 
 
 3
 In the spring of 1990, Jean McIntosh reached a settlement with the other persons involved in the accident. Under the terms of that agreement, those persons paid $250,500 in settlement of all claims against them related to Kristin's injuries from the accident. Those proceeds were placed into an escrow account pending resolution of the question of Jean McIntosh's obligation to the health care plan and the employer.
 
 
 4
 In late 1990, Jean McIntosh sued in federal court, seeking a declaratory judgment that the health care plan and the employer had no right to the money received from the settlement with the other persons involved in the accident. In early 1992, after cross-motions for summary judgment and the submission of a stipulated record, the trial court granted summary judgment to Jean McIntosh and awarded attorney's fees to her. The health care plan and the employer appeal. We reverse the judgment of the trial court and vacate the award of attorney's fees, for the reasons stated below, and remand the case for the entry of a judgment in favor of the health care plan and the employer.
 
 I.
 
 5
 The health care insurance contract contains the following provisions:
 
 
 6
 It is hereby agreed that in the event a Covered Person receives any benefits arising out of injury or illness for which the Covered Person has, may have, or asserts any claim or rights to recovery against a third party or parties, then any ... payments by the Plan for such benefits shall be made on the condition and with the agreement and understanding that the Plan will be reimbursed therefor by the Covered Person to the extent of ... the amount or amounts received by the Covered Person from such third party or parties by way of settlement....
 
 
 7
 The Plan shall be subrogated to all claims, demands, actions and rights of recovery of the Covered Person against a third party or parties ... to the extent of any and all payments made hereunder by the Plan in all jurisdictions where subrogation is lawfully permitted.
 
 
 8
 In its opinion granting summary judgment to Jean McIntosh, the trial court focused exclusively on the question of whether the health care plan and the employer could assert a right to subrogation under those provisions in a contract for health care insurance conceded by all of the parties to be governed by the Employee Retirement Income Security Act (ERISA), see 29 U.S.C. §§ 1001-1461. The trial court concluded that the preemptive effect of ERISA on state law, see 29 U.S.C. § 1144(a), did not extend to the subrogation right specified in the health care insurance contract at issue here and that Nebraska law would permit subrogation as to payments made by a minor's parent for medical expenses incurred by the minor. Interpreting the settlement agreement executed in this case, however, the trial court held that the proceeds consequent to that agreement were not intended to compensate Jean McIntosh for medical expenses incurred on Kristin's behalf, but instead were intended to compensate Kristin for her personal injuries (e.g., physical pain and mental suffering, see NJI 2d § 4.00, § 4.01). The trial court held, therefore, that the health care plan and the employer were not entitled to receive the proceeds of the settlement.
 
 
 9
 On appeal, the health care plan and the employer contend, among other things, that the first paragraph quoted above from the health care insurance contract creates an obligation for reimbursement that is separate from any right to subrogation under state law (which the health care plan and the employer consider to be the subject of the second paragraph quoted above) and therefore that the language of the settlement agreement is irrelevant. The health care plan and the employer offer several other arguments as well, but since we agree with the contentions asserted as to reimbursement, we need not reach those other issues.
 
 II.
 
 10
 We agree that the two paragraphs quoted above refer to different obligations--that the first paragraph creates a contractual obligation for reimbursement and that the second paragraph deals with a statutory or common-law right to subrogation. We believe that the language of the health care insurance contract is plain in this respect and, if interpreted in any other way, would be inexplicably duplicative.
 
 
 11
 We are not sure why the trial court focused exclusively on the second paragraph, and we express no opinion on the merits of the trial court's analysis of the obligations associated with that paragraph. We believe, however, that the first paragraph quoted above controls the resolution of this case.
 
 III.
 
 12
 It is undisputed that Kristin McIntosh is a "Covered Person" under the health care insurance contract. It is also undisputed that she received "benefits arising out of injury or illness" from the health care plan. (Jean McIntosh argues at one point that the reference to "benefits" received by a "Covered Person," contained in the first clause of the first paragraph quoted above from the health care insurance contract, relates to any amounts received from a settlement with third parties. That argument makes no sense in the context of the entire clause, the entire sentence, or the health care insurance contract as a whole, which refers repeatedly to "benefits" in describing payments made by the health care plan under its coverage provisions. We therefore reject that aspect of Jean McIntosh's argument.)
 
 
 13
 The crux of the dispute before us is whether the phrase "for which the Covered Person has, may have, or asserts any claim or rights to recovery against a third party or parties" modifies "benefits" or "injury or illness," both of which precede it in the relevant sentence of the health care insurance contract. We note that the health care insurance contract defines "injury" as "an accidental bodily hurt which requires treatment by a Physician." We construe "claim or rights to recovery," furthermore, as including any assertion of entitlement to compensation, either for so-called "economic" damages, such as medical expenses and loss of earning capacity, or for so-called "noneconomic" damages, such as physical pain and mental suffering. See NJI 2d § 4.00, § 4.01, § 5.02, § 5.03, § 5.04.
 
 
 14
 Jean McIntosh's position is that the relevant sentence should be read as follows:
 
 
 15
 It is hereby agreed that in the event a Covered Person [Kristin] receives any benefits ... for which the Covered Person [Kristin] has, may have, or asserts any claim or rights to recovery against a third party or parties, then any ... payments by the plan for such benefits ... will be reimbursed ... by the Covered Person [Kristin] to the extent of ... the amount or amounts received ... from such third party or parties by way of settlement.... [emphasis supplied]
 
 
 16
 With this construction of the sentence, where the critical phrase modifies "benefits," Jean McIntosh argues that because the contract language requires reimbursement only for claims actionable by Kristin herself (and the settlement agreement specifies that the proceeds are for damages suffered by Kristin herself), because the benefits paid by the health care plan were for medical expenses, and because Kristin has no claim to medical expenses under Nebraska law (that claim belonging instead to her mother because of Kristin's minor status), the health care plan and the employer are not entitled to the proceeds of the settlement.
 
 
 17
 The health care plan's and the employer's position is that the relevant sentence should be read in this way:
 
 
 18
 It is hereby agreed that in the event a Covered Person [Kristin] receives any benefits arising out of injury or illness for which the Covered Person [Kristin] has, may have, or asserts any claim or rights to recovery against a third party or parties, then any ... payments by the Plan for such benefits ... will be reimbursed ... by the Covered Person [Kristin] to the extent of ... the amount or amounts received ... from such third party or parties by way of settlement.... [emphasis supplied]
 
 
 19
 With this construction of the sentence, where the critical phrase modifies "injury or illness," the health care plan and the employer argue that because the medical expenses received by Kristin arose out of the physical injury from which all of her claims against third parties are derived, and because the contract language requires reimbursement for benefit payments by the health care plan associated with the physical injury sustained by Kristin if she receives a third-party settlement related to that physical injury, the health care plan and the employer are entitled to the proceeds of the settlement.
 
 
 20
 We hold that the health care plan's and the employer's construction of the language in the health care insurance contract is more reasonable than Jean McIntosh's construction of that language. We do so, in part, because the critical phrase appears directly after the words "injury or illness" in the relevant sentence. If the import of the health care insurance contract was to relate the claims asserted against a third party to the benefits paid by the health care plan, rather than to the physical injury or illness precipitating coverage, the intervening phrase "arising out of injury or illness" would be superfluous. We also note that interpreting the contract language in the manner urged by Jean McIntosh would lead to varying results, depending upon the random fact of whether the injured person was an adult or a minor. We find it illogical that the enforceability of a contract obligation should depend on so serendipitous a circumstance.
 
 
 21
 At oral argument, counsel for Jean McIntosh asserted that under the construction urged by the health care plan and the employer, and which we adopt, payments received by Kristin on account of a separate disability insurance policy would also be reachable for reimbursement purposes; counsel then suggested that such a result would clearly be both illogical and unjust. We note, in response, that the health care insurance contract specifies recovery only of "amounts received ... by way of settlement" from a third party and, therefore, would not ordinarily apply in circumstances where Kristin had personal coverage under a second insurance policy. It is true that the "settlement" might be in resolution of a disputed claim under a second insurance policy. In that event, however, the enforceability of the reimbursement obligation would again depend on happenstance--whether or not the claim under the second insurance policy was disputed. We decline to construe this contract in a way that would lead to such haphazard results.
 
 IV.
 
 22
 For the reasons stated, then, we reverse the judgment of the trial court. Since the award of attorney's fees to Jean McIntosh was obviously predicated on the fact of a judgment in her favor, we also vacate that award. We remand the case for the entry of a judgment in favor of the health care plan and the employer.
 
 
 
 *
 The HONORABLE DONALD J. STOHR, United States District Judge for the Eastern District of Missouri, sitting by designation