87 F.3d 1321
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
OPERATING ENGINEERS HEALTH & WELFARE FUND, Plaintiff-Appellee,
v.
Arthur STRAUS; Dawna Straus, Defendants-Appellants.
 No. 95-55785.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 11, 1996.*
Decided June 18, 1996.
 
 Before: CANBY, NOONAN, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 In this action brought pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461, Arthur and Dawna Straus appeal pro se from two district court orders and a judgment in favor of Operating Engineers Health and Welfare Fund (Fund). On December 15, 1994, the district court denied the Straus's motions for sanctions and dismissal of the complaint. On May 4, 1995, the district court granted the Fund's motions for summary judgment and attorneys' fees. The district court exercised jurisdiction pursuant to 29 U.S.C. § 1132(e). We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291, and we affirm.
 
 
 3
 The Fund brought this action on December 8, 1993, alleging that the Agreement and Declaration of Trust Establishing the Operating Engineers Health and Welfare Fund (Trust Agreement) and the Rules and Regulations Providing Health Care Benefits for Active Employees of the Fund (Plan) obligated the Strauses to reimburse the Fund for $300,528.07. Dawna received medical treatment and incurred bills for such treatment following a gunshot wound inflicted by her neighbor, Jim Erwin. The Fund paid Dawna $300,528.07 in benefits. The Fund argues that the Trust Agreement and Plan required Dawna to reimburse the Fund once she received a $301,000 settlement from Erwin. The district court agreed, and eventually awarded the Fund $253,349.13, which represents the $300,528.07 less $47,178.94 in conceded additional medical expenses.
 
 
 4
 The Strauses make numerous allegations of error, many of which are unintelligible and cite no legal authority. Essentially, the Strauses argue that the district court erred by (1) denying their motion to dismiss the Fund's action because of discovery violations; (2) holding an unfair hearing where they were not allowed to present their case; (3) dismissing their counterclaim; and (4) allowing the Fund to recover even though the Fund had no discretion under ERISA or the Plan to disburse payments to the Straus's. The Strauses also assert numerous issues of material fact, which they argue should be decided by trial. The Strauses do not appeal from the district court's award of attorneys' fees to the Fund or from numerous other actions the district court took in its orders of December 15, 1994, and May 4, 1995. We address each alleged error in turn.
 
 
 5
 * First, the Strauses argue that the district court should have dismissed the Fund's complaint because the Fund withheld documents and failed to supply a pretrial conference order. They also contend that the district court should have held a pretrial status conference pursuant to Local Rule 6.4, but there is no indication that the Strauses ever requested such a conference below. We will not consider this request for the first time on appeal. G-K Properties v. Redevelopment Agency of the City of San Jose, 577 F.2d 645, 648 (9th Cir.1978) (rejecting argument opposing motion to dismiss not asserted below).
 
 
 6
 The district court denied the Straus's motion, entitled "Motion to Dismiss Complaint by Summary Judgment," stating that it "fail[ed] to address the standard for either a motion to dismiss or a motion for summary judgment or why either standard has been met in this case." Because our standard of review of a denial of a motion to dismiss differs from the standard applied to the denial of a motion for summary judgment, we will review the district court's action as if it had denied two separate motions.
 
 
 7
 We review the district court's denial of the Straus's motion to dismiss for abuse of discretion. Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1408 (9th Cir.1990), cert. denied, 498 U.S. 1109 (1991). Absent a definite and firm conviction that the district court made a clear error in judgment, we will not disturb its decision. Id.
 
 
 8
 The Strauses again have failed to cite any legal standards in support of their motion to dismiss, and they cite no authority in support of their assignment of error. Nonetheless, we recognize that a party requesting the drastic sanction of dismissal must show that the opposing party's noncompliance was due to willfulness, fault, or bad faith. Henry v. Gill Indus., 983 F.2d 943, 946 (9th Cir.1993). The record before us does not support any indication of willfulness, fault, or bad faith on the part of the Fund. To the contrary, it is the Straus's arguments that totally lack merit. The Strauses admit that they eventually received documents requested from the Fund, and they have made numerous assertions throughout the litigation suggesting that they already had copies of some of the requested documents. Moreover, the Strauses failed even to attend the pretrial conference hearing on March 27, 1995. Thus, their argument that the Fund's failure to submit a pretrial conference order prior to that hearing holds very little weight. In short, the district court did not abuse its discretion in denying the Straus's motion to dismiss based on discovery violations.
 
 
 9
 If we consider the Straus's motion as one for summary judgment, we must review the district court's decision de novo. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, 116 S.Ct. 1261 (1996). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Id. We agree with the district court that not only have the Strauses provided no legal authority suggesting summary judgment is appropriate, but they have in fact argued vociferously that many issues of material fact remain to be decided. Summary judgment in favor of the Strauses therefore is not warranted.
 
 II
 
 10
 We next consider the Straus's contention that the district court violated their First Amendment right to free speech and their right to a fair hearing by precluding them from presenting their case and by failing to control pretrial procedures. Although the Strauses failed to file a motion in the district court alleging each asserted violation, we will address their arguments briefly.
 
 
 11
 The Strauses first contend that the district court denied them the right to speak at the September 26, 1994, pretrial conference hearing and failed to address various issues. At the September 26 hearing, however, the court merely rescheduled the pretrial conference hearing to follow a hearing held November 14, 1994, on various motions. Because the court made no substantive rulings at the September 26 hearing, the Strauses were not entitled to present evidence or testimony unrelated to the rescheduling of the pretrial conference hearing. See Zal v. Steppe, 968 F.2d 924, 932 (9th Cir.) (Trott, J., concurring) (First Amendment rights in the courtroom do not exceed the speaker's trial rights), cert. denied, 506 U.S. 1021 (1992). Moreover, the opportunity to be heard does not necessarily include an opportunity to present one's arguments orally. Partington v. Gedan, 961 F.2d 852, 865 (9th Cir.) (addressing opportunity to be heard in due process context), cert. denied, 506 U.S. 999 (1992).
 
 
 12
 The Strauses next contend that the district court denied them the opportunity to rebut evidence that they themselves submitted at a November 14, 1994, motions hearing. The district court, however, specifically asked Dawna Straus (Arthur Straus was not in attendance) whether she had "[a]nything in addition to [her] written statement that [she] want[ed] to add." Dawna replied: "No." She cannot now argue that the district court precluded her from presenting any testimony or evidence.
 
 
 13
 The Strauses also argue that the district court conducted the pretrial conference hearing and summary judgment motion hearing on March 27, 1995, in a manner that denied them a fair hearing. First, they argue that the Fund never submitted a pretrial conference order in accordance with Local Rule 9.8, which provides that a pretrial conference order "shall be prepared by plaintiff's counsel and signed by all counsel." C.D.Cal.R. 9.8. Whether a pretrial conference order was ever prepared is irrelevant because the district court granted the Fund's motion for summary judgment. Accordingly, the court vacated the trial date set for April 11, 1995.
 
 
 14
 Second, the Strauses argue that the district court denied them the opportunity to respond to the Fund's motion for summary judgment filed on March 3, 1995. The Strauses assert that they notified the Fund's counsel to inform them that a death in the family would prevent them from attending the March 27, 1995, hearing. The Strauses, however, failed to request the court for an enlargement of time to respond to the Fund's motion until March 27, 1995, the date of the hearing. The court essentially granted the Straus's motion by giving them until April 13, 1995, to respond. Thus, there is no error from which the Straus's may appeal. See Estate of Bishop v. Bechtel Power Corp., 905 F.2d 1272, 1276 (9th Cir.1990) (no standing to appeal unless party is aggrieved by district court order).
 
 III
 
 15
 We next consider whether the district court properly granted the Fund summary judgment on the Straus's counterclaim. The Straus's amended answer originally brought two counterclaims, the first alleging breach of contract for failure to pay claims and the second alleging fraud. The district court dismissed the fraud claim on December 15, 1994, holding that it was preempted pursuant to 29 U.S.C. § 1144(a). The Straus's appellate briefs make no arguments related to preemption. Their opening brief refers to only one "counterclaim" in the section listing issues raised on appeal, and their reply brief discusses only the first counterclaim. We therefore assume the Strauses appeal only from the district court's entry of summary judgment in favor of the Fund on the breach of contract counterclaim.
 
 
 16
 The Straus's counterclaim originally requested $52,202 for medical and other hospital expenses incurred as a result of Dawna's injuries. That amount was later reduced to $47,178.94. The Fund initially refused to pay any benefits to the Strauses until they reimbursed them for benefits already paid. At the March 27, 1995, hearing on the Fund's motion for summary judgment, the Fund conceded that once the Strauses reimburse it, it will be obligated to pay the additional medical costs. The district court thus granted the Fund's motion for summary judgment in accordance with the Plan, but reduced the Fund's final judgment by $47,178.94. The Strauses therefore suffered no injury as a result of the district court's grant of summary judgment; indeed, they received all relief requested in their counterclaim. They cannot appeal from an order that did not cause them injury. See id.
 
 IV
 
 17
 Finally, the Strauses contend that numerous issues of material fact preclude the district court's grant of summary judgment in favor of the Fund on the Fund's reimbursement claim. We review the district court's decision de novo. Warren, 58 F.3d at 441. We must determine, viewing the evidence in the light most favorable to the Strauses, whether any genuine issues of material fact exist and whether the district court correctly applied the relevant substantive law. Id.
 
 
 18
 The Fund rests its claim primarily on Article XII, Section 9 of the Plan, which states, in pertinent part:
 
 
 19
 If an Eligible Individual is injured through the act or omission of another person, benefits arising from the injury as set forth in this Plan shall be paid only on the condition that such Eligible Individual shall:
 
 
 20
 (a) Reimburse the Plan, to the extent of benefits provided by the Plan, immediately upon receipt of damages by him, whether by judgment, compromise, settlement or otherwise ...; and
 
 
 21
 (b) Provide the Plan a lien, to the extent of benefits provided by the Plan, upon the damages recovered, or to be recovered, by the Eligible Individual ... on account of his injuries. The lien shall apply whether damages are recovered, or are to be recovered, by judgment, compromise, settlement or otherwise. The lien may be filed with the person whose act caused the injuries, his agent, a court, or administrative agency.
 
 
 22
 The Eligible Individual ... shall execute such documents as the Trustees of the Plan may require acknowledging and evidencing the rights of the Plan as set forth in [this] Section [ ].
 
 
 23
 Neither party disputes that Dawna, as the spouse of an employee covered by the Plan, is an "Eligible Individual." Although the Strauses make various arguments concerning the Plan's authenticity and applicability to them, they do not dispute that Dawna's injuries were covered by the Plan, and they have attempted throughout this litigation to enforce certain Plan provisions. For example, the Strauses assert that the Plan is unavailable to them, outdated, or unenforceable, while at the same time arguing that they are owed additional benefits according to the Plan's terms. Because the Strauses have attempted to enforce the Plan and they have asserted no cognizable basis for exempting themselves from certain Plan provisions, we assume the Plan is an "employee welfare benefit plan" under 29 U.S.C. § 1002(1), and we apply its provisions to the dispute at hand.
 
 
 24
 The parties primarily dispute the proper interpretation of Section 9, as set forth above. The Fund argues, and the district court agreed, that Section 9(a) requires the Strauses to reimburse the Fund for all benefits the Fund has paid to the Strauses, regardless of whether the Straus's recovery from Erwin is characterized as damages for medical expenses or damages for pain and suffering. The Strauses argue that the Plan requires them to reimburse the Fund only to the extent they recovered medical expenses, and that the Fund forfeited any right to reimbursement when it paid benefits prior to the execution of a lien.
 
 
 25
 We agree with the district court that Section 9 requires the Strauses "to completely reimburse [the Fund] to the extent of benefits provided by the plan." We must interpret terms of an ERISA plan in an "ordinary and popular sense as would a person of average intelligence and experience." See Evans v. Safeco Life Ins., 916 F.2d 1437, 1441 (9th Cir.1990) (quotation omitted). The plain language of the Plan unambiguously requires reimbursement of all benefits paid upon any recovery from a third party. The Strauses argue that because they amended the language of a lien executed by them to permit reimbursement from only "medical expenses," any recovery for nonmedical expenses is not subject to Section 9. This argument suffers from at least two flaws.
 
 
 26
 First, even if we considered the Plan's language ambiguous and interpreted it in favor of the Strauses, Barnes v. Independent Automobile Dealers Assoc. of Cal. Health and Welfare Benefit Plan, 64 F.3d 1389, 1393 (9th Cir.1995), we could not conclude that the Plan exempts from Section 9 damages for pain and suffering. Generally, "the language of a plan's repayment provision establishes the extent of the plan's ... reimbursement right." Chitkin v. Lincoln Nat'l Ins. Co., 879 F.Supp. 841, 859 (S.D.Cal.1995). Section 9 makes no indication that any category of recovered damages are exempt from the obligation to reimburse the Fund for benefits paid. See Dugan v. Nickla, 763 F.Supp. 981, 984 (N.D.Ill.1991).
 
 
 27
 Second, the language of any lien executed by the Strauses is not relevant to the reimbursement requirement established in Section 9(a). The payment of benefits on condition of an executed lien is a condition of payment distinct from the reimbursement requirement, which has no bearing on the Fund's right to reimbursement. See McIntosh v. Pacific Holding Co., 992 F.2d 882, 884 (8th Cir.), cert. denied, 114 S.Ct. 441 (1993). Moreover, some courts have held that a settling party's allocation of the settlement has no bearing on a plan's right to reimbursement. See id.; Cutting v. Jerome Foods, Inc., 820 F.Supp. 1146, 1155 (W.D.Wis.1991), aff'd, 993 F.2d 1293 (7th Cir.), cert. denied, 114 S.Ct. 308 (1993). Finally, the Straus's characterization of their recovery as damages for pain and suffering, even if relevant, is not supported by any factual or legal assertions.
 
 
 28
 We also agree with the district court that the Fund did not waive its right to reimbursement by providing benefits to the Strauses prior to the execution of a lien. Section 9(b), which addresses the lien condition, explicitly contemplates that an Eligible Individual may receive benefits and recover damages prior to executing a lien. Moreover, Section 9 contains nothing about conditions under which the Fund waives its right to reimbursement pursuant to subsection (a).
 
 
 29
 The Strauses make numerous additional arguments in an attempt to identify a disputed material issue of fact. The Strauses fail, however, to support many of their allegations with citations to the record or controlling law, and many of the issues they raise are irrelevant to the district court's decision on the Fund's reimbursement claim. For example, they contend that the Plan documents were not authentic because one document was sixteen years old and the Trust Agreement was unsigned and undated. The Strauses cite no legal authority that supports their conclusion.
 
 
 30
 The Strauses also contend that the amount of the benefits paid them by the Fund is disputed. While the Strauses allege that the Fund has paid them $400,895.21, the Fund concedes that it paid only $300,528.07, and it requests only that amount be reimbursed. Because the Strauses agree that they received at least $300,528.07 from the Fund, the issue whether they received more than that amount is irrelevant to the Fund's reimbursement claim.
 
 
 31
 The only factual allegation asserted by the Strauses that gives us pause is that the Fund already received $250,000 in reimbursement from Erwin. The Strauses cite to an Arizona court minute order and correspondence with the Fund as evidence that the Fund in fact received payment directly from Erwin and his insurance company. The Fund will receive a double recovery, the Strauses argue, if we affirm the district court's judgment. The Strauses raised this factual assertion before the district court, but the court did not comment on it. We are unable to perceive that the Strauses have provided no evidence supporting their contention that the Fund actually received $250,000, or any part thereof, from Erwin.
 
 
 32
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3